## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDABETH RIVERA, on behalf of herself and all others similarly situated, | Case No.: 1:16-cv-02714 |
| Plaintiff, | Judge: Honorable Edmond E. Chang |
| v. | Magistrate Michael T. Mason |
| GOOGLE INC., | |
| Defendant. | |
| JOSEPH WEISS, individually and on behalf of all others similarly situated, | Case No.: 1:16-cv-02870 |
| Plaintiff, | Judge: Honorable Edmond E. Chang |
| v. | Magistrate Michael T. Mason |
| GOOGLE INC., | |
| Defendant. | |

## GOOGLE'S INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS CONSOLIDATED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .................................................................................................. 2

    A.   Google Photos ........................................................................................... 2

    B.   Illinois' Biometric Information Privacy Act ............................................. 3

    C.   Plaintiffs' Allegations ............................................................................... 4

    D.   Procedural History ..................................................................................... 5

III. ARGUMENT ....................................................................................................... 5

    A.   BIPA Does Not Apply:  It Excludes From Its Scope Photographs and
Information Derived From Photographs .................................................... 5

        1.   Applicable Standard ....................................................................... 5

        2.   BIPA's Plain Language Bars Plaintiffs' Claims ........................... 6

        3.   BIPA's Legislative History Confirms That It Was Not Intended to
Extend to Deriving Information From Photos ................................ 8

        4.   The Illinois Legislature Would Not Have Intended to Enact a
Statute that Effectively Prohibits Photo-Organizing Technology .......... 10

        5.   The Illinois Legislature Would Not Have Intended BIPA to Apply
to Conduct Outside of Illinois, in Violation of the Dormant
Commerce Clause ........................................................................ 11

        6.   Other Courts Have Reached the Wrong Result with Respect to
BIPA ............................................................................................ 13

    B.   If the Court Were to Adopt Plaintiffs' Interpretation of BIPA, BIPA
Would Violate the Dormant Commerce Clause and the Complaints Would
Be Subject to Dismissal on That Basis .................................................. 15

        1.   Applicable Standard ..................................................................... 16

        2.   If BIPA Applies to Scans of Face Geometry Derived from Photos,
It Violates the Dormant Commerce Clause ............................... 17

IV.  CONCLUSION ................................................................................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Booksellers Found. v. Dean*,
   342 F.3d 96 (2d Cir. 2003)...................................................................................19

*Am. Civil Liberties Union v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999) ...........................................................................19

*Am. Libraries Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D. N.Y. 1997)................................................................17, 19

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill. 2d 100 (2005) .........................................................................................12

*Bergin v. Bd. of Trustees of Teachers' Ret. Sys.*,
   31 Ill. 2d 566, 202 N.E.2d 489 (1964) ...............................................................10

*Clark v. Martinez*,
   543 U.S. 371 (2005).............................................................................................13

*DeLuna v. Burciaga*,
   223 Ill. 2d 49 (2006) .........................................................................................5, 6

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982)......................................................................................16, 17

*Graham v. Gen. U.S. Grant Post No. 2665 V.F.W.*,
   43 Ill. 2d 1 (1969) ...............................................................................................12

*Great Atl. & Pac. Tea Co. v. Cottrell*,
   424 U.S. 366 (1976).............................................................................................16

*Guinto v. Nestorowicz*,
   No. 14 C 09940, 2015 WL 3421456 (N.D. Ill. May 28, 2015) ...........................15

*Gulf Oil Corp. v. Copp Paving Co.*,
   419 U.S. 186 (1974)...............................................................................................9

*Healy v. Beer Inst.*,
   491 U.S. 324 (1989)..................................................................................12, 17, 19

*Hinkle by Hinkle v. Henderson*,
   85 F.3d 298 (7th Cir. 1996) .................................................................................14

*In re Facebook Biometric Info. Privacy Litig.*,
   No. 15-cv-03747, 2016 WL 2593853 (N.D. Cal. May 5, 2016)..................................13, 14, 15

*In re Meier*,
   532 B.R. 78 (Bankr. N.D. Ill. 2015) ........................................................................................8

*In re Ryan*,
   725 F.3d 623 (7th Cir. 2013) ................................................................................................13

*Klein v. Depuy, Inc.*,
   476 F. Supp. 2d 1007 (N.D. Ind. 2007), *aff'd*, 506 F.3d 553 (7th Cir. 2007)........................13

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
   543 U.S. 50 (2004)...................................................................................................................7

*Kraft, Inc. v. Edgar*,
   138 Ill. 2d 178 (1990) ..............................................................................................................7

*Krohe v. City of Bloomington*,
   204 Ill. 2d 392 (2003) ..............................................................................................................8

*Laborer's Int'l Union of N. Am., Local 1280 v. State Labor Relations Bd.*,
   154 Ill. App. 3d 1045, 507 N.E.2d 1200 (1987) .....................................................................9

*Midlock v. Apple Vacations W., Inc.*,
   406 F.3d 453 (7th Cir. 2005) ................................................................................................13

*Midwest Title Loans, Inc. v. Mills*,
   593 F.3d 660 (7th Cir. 2010) ................................................................................................16

*Norberg v. Shutterfly, Inc.*,
   No. 15-cv-5351 (N. D. Ill., Dec. 29, 2015)......................................................................13, 14

*People ex rel. Sklodowski*, 162 Ill.2d 117 (1994) .......................................................................19

*People ex rel. Stocke v. 11 Slot Machines*,
   80 Ill. App. 3d 109 (1979) ..................................................................................................6, 14

*People v. Lucas*,
   231 Ill. 2d 169 (2008) ..............................................................................................................6

*People v. Trainor*,
   196 Ill. 2d 318 (2001) ..........................................................................................................5, 7

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ..................................................................................................5

*Potomac Leasing Co. v. Chuck's Pub, Inc.*,
   156 Ill. App. 3d 755 (1987) .....................................................................................................2

*Quill Corp. v. N.D.*,
  504 U.S. 298 (1992) ..................................................................................................16

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  132 S. Ct. 2065 (2012) ..............................................................................................8

*Rothgery v. Gillespie Cty., Tex.*,
  554 U.S. 191 (2008) ..................................................................................................14

*S. Illinoisan v. Ill. Dep't of Pub. Health*,
  218 Ill. 2d 390 (2006) ..............................................................................................6, 7

*Sam Francis Found. v. eBay Inc.*,
  No. 2:11-CV-08622, 2012 WL 12294395 (C.D. Cal. May 17, 2012) ......................19

*Sam Francis Foundation v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 795, 193 L. Ed. 2d 710
  (2016) ........................................................................................................................18

*Scherr v. Marriott Int'l, Inc.*,
  703 F.3d 1069 (7th Cir. 2013) ....................................................................................7

*Teltech Systems, Inc. v. McCollum*,
  No. 08-61644-CIV, 2009 WL 10626585 (S.D. Fla. July 16, 2009) ...................18, 19

*Wilson v. Dep't of Revenue*,
  169 Ill. 2d 306 (1996) ...............................................................................................13

**STATUTES**

Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ................................... passim

California Resale Royalty Act, Cal. Civ. Code § 986(a) .......................................18, 19

Caller ID Anti-Spoofing Act, Fla. Stat. § 817.487 .....................................................18

**RULES**

Fed. R. Civ. P. 12(b) .....................................................................................................2

**OTHER AUTHORITIES**

Google Terms of Service, available at https://www.google.com/policies/terms/
  (last accessed on May 18, 2016) ................................................................................2

IL H.R. Tran. 2008 Reg. Sess. No. 276 (May 30, 2008) ..........................................3, 4

Senate Bill 2400, § 10 (Feb. 14, 2008) ....................................................................9, 10

Senate Bill 2400, § 10 (Apr. 11, 2008) .................................................................................9, 10

Senate Bill 2400, § 10 (May 28, 2008) ................................................................................9, 10

Stephen Dolezalek and Josh Freed, Third Way, *An American Kodak Moment*
   (Apr.17, 2014), *available at* http://www.thirdway.org/report/an-american-
   kodak-moment ..................................................................................................................15

United States Constitution ...........................................................................................................1

# I.    INTRODUCTION

This case is, first, about whether an Illinois statute that regulates biometric data but expressly does not regulate photos or information derived from photos, applies to an online photo repository that helps users store and organize their photos. The statute is the Biometrics Information Privacy Act ("BIPA"); the online photo repository is Google Photos; and the question would seem to answer itself. Yet, undeterred by this explicit carve out, and indeed without addressing it, Plaintiffs claim that BIPA somehow applies to Google Photos.

It doesn't. BIPA was designed to regulate scans of human eyes, fingers, voices and faces, in answer to the rising use of biometrics in "financial transactions and security screenings." Google Photos does something entirely different. It derives information from a user's photos to suggest to that user a collection of her photos that appear to feature the same person. (Of course, the user could do this with her own eyes—Google Photos is just saving her some time.) Within the user's own private repository, the user may then label that grouping with any name or title she chooses (e.g., "Mom" or "Grandad"). Some (Plaintiffs included) might call this "facial recognition," but of course BIPA doesn't regulate facial recognition either: the legislature proposed and rejected inclusion of that term. Above all, Google cannot have violated a statute that excludes from its scope information derived from photos when the Google technology at issue is entirely built upon information derived from photos. The Court should dismiss the Complaints[1] on this basis alone. *See* Part III(A), *infra*.

Even if Plaintiffs' overreaching interpretation of BIPA were correct, Plaintiffs would face a greater obstacle still: the United States Constitution. Under the dormant Commerce Clause, a state statute is unconstitutional if it effectively regulates conduct occurring wholly outside of that state. But without its exception for photos and information derived from photos, that is precisely what BIPA does. Because one cannot always know whether a photo was taken in Illinois,

---

[1] Pursuant to the Court's Orders of May 9, 2016 (Rivera Dkt. 30; Weiss Dkt. 27), this consolidated Motion to Dismiss seeks dismissal of both the Complaint filed by Lindabeth Rivera on March 1, 2016 (the "Rivera Complaint") and the Complaint filed by Joseph Weiss on March 4, 2016 (the "Weiss Complaint") (together, the "Complaints").

depicts Illinois residents, or has some other connection to Illinois, complying with BIPA in Illinois effectively means complying with BIPA everywhere. But Illinois legislators cannot decide policy for the rest of the world. Interpreting BIPA to have such far-reaching impact would render it unconstitutional under the dormant Commerce Clause, and void. *See* Part III(B), *infra*.

In short, Plaintiffs ask this Court to ignore BIPA's plain language, and to hold that one state can dictate how, and ultimately whether, certain technology may be used far beyond its own borders. The Court should grant Google's motion with prejudice.[2]

## II.  BACKGROUND

### A.  Google Photos

Google operates Google Photos, a free service that lets individuals easily upload, organize, and share their photos with others. *See* Complaints, ¶¶ 8, 19. When a user uploads photos to Google Photos, Google can automatically create digital photo albums for the user that group similar items together—such as objects, scenery, and faces. *See* Complaints, ¶¶ 19, 21. According to Plaintiffs, Google allegedly does this by extracting data from the photos, then using facial recognition technology to create templates from the shapes in the photos, including the shapes of faces. *Id.* ¶ 22.[3] Google Photos is available to users outside as well as within the state of Illinois.

---

[2] Plaintiff Joseph Weiss alleges that he is a Google Photos user, therefore he necessarily agreed to Google's Terms of Service which state that "[t]he laws of California, U.S.A. . . . will apply to any disputes arising out of or relating to these terms or the Services," including Google Photos. *See* Google Terms of Service, available at https://www.google.com/policies/terms/ (last accessed on May 18, 2016). Because Weiss contractually agreed that California law governs this dispute, he is precluded from pursuing a claim under BIPA, an Illinois statute. *See Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 759 (1987) (holding that a choice-of-law provision selecting Michigan law was valid even though Michigan law deprived plaintiff of a remedy). Although Google is not moving to dismiss Weiss' claim on that basis because of the factual issues implicated, Google expressly preserves and does not waive its right to more fully assert that defense at a more appropriate time. *See* Fed. R. Civ. P. 12(b)(6) (choice of law is not among the defenses that is waived if not asserted in a motion to dismiss).

[3] For purposes of this Motion, Google addresses the facts as alleged. Google does not, however, concede that the allegations are accurate. Plaintiffs' description of Google Photos is inaccurate in many respects.

**B.** **Illinois' Biometric Information Privacy Act**

BIPA was enacted in 2008 in reaction to the "growing" use of biometrics "in the business and security screening sectors," and to address the concerns of members of the public who were "weary of the use of biometrics when such information is tied to finances and other personal information." 740 ILCS 14/5(a), (d). Recognizing that "[t]he use of biometrics . . . appear[ed] to promise streamlined financial transactions and security screenings," the legislature sought to allay the public's concerns by regulating the collection of biometric information. *Id.* BIPA was prompted in large part by the financial demise of a fingerprint scanning company, Pay By Touch. *See* IL H.R. Tran. 2008 Reg. Sess. No. 276, at 249 (May 30, 2008) (Statement of Rep. Kathleen A. Ryg) ("Ryg Statement") (Exhibit A). Pay By Touch's assets included an extensive collection of fingerprint scans generated by the "finger-scan technologies at grocery stores," which are expressly referred to in the statute. *Id; see also* 740 ILCS 14/5(b). BIPA was enacted after a California bankruptcy court had approved the sale of these assets to a third party, and it was unclear what would become of customers' biometric data. IL H.R. Tran. 2008 Reg. Sess. No. 276, at 249 (May 30, 2008) (Statement of Rep. Kathleen A. Ryg) ("Ryg Statement") (Exhibit A).

BIPA regulates the collection of "biometric identifiers" and "biometric information." A "biometric identifier" means a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and excludes "photographs." 740 ILCS 14/10. "Biometric information" is defined as any information "based on" a biometric identifier, but expressly does *not* include information derived from photographs. *Id.* Only if one or both of these defined terms is triggered does BIPA apply. Both of these defined terms appear side-by-side throughout the statute, and all of BIPA's restrictions apply equally to both "biometric identifiers" and "biometric information." *Id.* at 14/15. Under BIPA, private entities (including individuals) must give a person written notice and obtain a written release[4] before they collect or otherwise obtain "biometric identifiers" or

---

[4] "Written Release" is defined in the statute as "informed written consent or, in the context of employment, a release executed by an employee as a condition of employment." 740 ILCS 14/10.

"biometric information," and must also comply with other restrictions regarding such information.  *Id.* at 14/15.

## C.    Plaintiffs' Allegations

Weiss alleges that he has a Google Photos account to which he uploaded twenty-one photos of himself.  Weiss Compl., ¶¶ 27, 28.  Weiss claims that Google "extracted" "geometric data" from the photos he uploaded, used the data from the photos to create a template of his face with facial recognition technology, then used that template to help him organize his photos.  *Id.*, ¶¶ 22, 29-30.  Weiss alleges that Google Photos also used the data "to recognize [his] gender, age, race, and location."  *Id.*, ¶ 31.

Rivera does not use Google Photos, but alleges that someone else uploaded approximately eleven photos of her to Google Photos.  Rivera Compl., ¶¶ 26, 27.  Like Weiss, Rivera alleges that Google extracted data from the photos to create a template of her face using facial recognition technology, then used that template to organize photos of her and to recognize her gender, age, race, and location.  *Id.*, ¶¶ 28-30.

Both Plaintiffs claim that Google Photos collects and stores biometric identifiers and biometric information.  Complaints, ¶¶ 21, 24-25.  Plaintiffs allege that Google creates a "scan" of "face geometry," which constitutes a "biometric identifier."  Plaintiffs further allege that these "scans" come from data that Google "extracts" from photos uploaded to Google Photos.  *See id.* ¶¶ 21-23.  In other words: Plaintiffs allege that the purported "scans" are derived from photos.

Weiss seeks to represent a class of "[a]ll individuals who, while residing in the State of Illinois, had their biometric identifiers, including 'face templates' (or 'face prints'), collected, captured, received, or otherwise obtained by Google."  Weiss Compl., ¶ 36.  Rivera seeks to represent a subset of this class, defined as "[a]ll *non-users* of the Google Photos service who, while residing in the State of Illinois, had their biometric identifiers, including 'face templates' (or 'face prints'), collected, captured, received, or otherwise obtained by Google."  Rivera Compl., ¶ 35 (emphasis added).  Each Plaintiff seeks declaratory and injunctive relief, litigation expenses, attorneys' fees, and interest, along with statutory damages of $5,000 for each

intentional and reckless, and $1,000 for each negligent, violation of BIPA.  *See* Weiss Compl., ¶¶ 14-15; Rivera Compl., ¶ 15 (Prayers for Relief); 740 ILCS 14/20(1), (2) (BIPA's statutory damages provisions).

## D.    Procedural History

Counsel for Plaintiffs filed the Rivera Complaint on March 1, 2016, and the Weiss Complaint three days later.  On March 30, Google moved for an extension to May 18 of the deadline to answer or otherwise plead, which the Court granted.  *Rivera* Dkt. 11; *Weiss* Dkt. 11. On April 1, Rivera filed an uncontested motion to reassign *Weiss* to this Court's calendar, which the Court also granted.  *Rivera* Dkt. 11, 15; *see also Weiss* Dkt. 12, 13.  On May 9, the Court granted Google's agreed motion to file this motion as a single, combined motion to dismiss both the *Rivera* and *Weiss* Complaints.  *Rivera* Dkt. 30; *Weiss* Dkt. 27.

## III.    ARGUMENT

## A.    BIPA Does Not Apply:  It Excludes From Its Scope Photographs and Information Derived From Photographs

Plaintiffs' interpretation of BIPA contradicts its express language, is inconsistent with the legislative history, and, if adopted, would render BIPA unconstitutional.  The Court should reject Plaintiffs' overreaching and unworkable interpretation of the statute, find that BIPA does not apply, and dismiss Plaintiffs' claims.

### 1.    Applicable Standard

Because the state courts of Illinois have yet to interpret BIPA, this Court's role is to predict how the Illinois Supreme Court would interpret the statute.  *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013).  The Illinois Supreme Court's "primary objective" when construing a statute "is to ascertain and give effect to the intent of the legislature."  *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).  That inquiry begins with "[t]he plain language of the statute," which is "the most reliable indication of the legislature's objectives."  *Id*.  "[W]ords cannot be read in a fashion that would render other words or phrases meaningless, redundant, or superfluous."  *People v. Trainor*, 196 Ill. 2d 318, 332 (2001).  And

Courts should not add, delete, or modify words in a statute in a way that would change its meaning. *People ex rel. Stocke v. 11 Slot Machines*, 80 Ill. App. 3d 109, 115 (1979).

"[I]f the language of a statute is ambiguous," a court may "look to tools of interpretation to ascertain the meaning of a provision." *DeLuna*, 223 Ill. 2d at 59. Courts must "view all provisions of a[n] enactment as a whole," considering each provision "in light of [the] other relevant provisions of the statute" rather than "in isolation." *S. Illinoisan v. Ill. Dep't of Pub. Health,* 218 Ill. 2d 390, 415 (2006). Courts also should interpret a statute consistent with its legislative history and the context in which the statute was passed. *See People v. Lucas*, 231 Ill. 2d 169, 176 (2008) ("[A] court may determine the intent of the legislature not only from the language of the statute, but also from the reason and necessity for the statute, the evils to be remedied, and the objects and purposes to be obtained.") .

Illinois' rules of statutory construction compel the conclusion that BIPA excludes both photographs and information derived from photographs, and was intended to regulate in-person scans, not information extracted from photographs.

### 2. BIPA's Plain Language Bars Plaintiffs' Claims

To state a claim under BIPA, a plaintiff must, as a threshold matter, establish that "biometric identifiers" or "biometric information" are at issue. *See* 740 ILCS 14/15. "Biometric identifier means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," but "biometric identifiers do *not* include . . . photographs." *Id.* "Biometric information" means "any information . . . based on an individual's biometric identifier used to identify an individual" but, critically, "does *not* include information derived from" photographs. 740 ILCS 14/10 (emphasis added).

Here, Plaintiffs assert that the "templates" allegedly created by Google are biometric identifiers because they are a "scan of . . . face geometry." *See* Complaints, ¶¶ 16 n. 6, 21. But in the next breath, Plaintiffs allege that the templates are *derived from photographs*. *See, e.g.,* Complaints, ¶ 5 (Google allegedly "extracts . . . data from the points and contours of the faces that appear in photos" to create the templates); *see also* Complaints, ¶ 21 (Google allegedly

"scans each and every photo" and "extracts geometric data" to create the templates). Plaintiffs' position is as follows: even though BIPA excludes from its scope information derived from photos (740 ILCS 14/10), and even though Google's "face templates" are derived from photos (Complaints ¶¶ 5, 21), BIPA somehow still applies.

Plaintiffs' reading of BIPA cannot be correct. *First*, and most importantly, Plaintiffs' reading of BIPA would nullify the exclusion for "information derived from photos." Both "biometric identifier" and "biometric information" appear side-by-side throughout the statute, and all provisions apply equally to both terms. Consequently, one cannot construe "biometric identifier" to *include* information derived from photographs without rendering meaningless the express *exception* for information derived from photos that is set forth in the definition of "biometric information." In short, Plaintiffs' interpretation of biometric identifiers is the logical equivalent of [(P) and (not-P)] being littered throughout BIPA—a contradiction. Courts interpreting Illinois statutes cannot interpret one statutory term in a way that nullifies another. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.") (citation omitted); *Trainor*, 196 Ill.2d at 332 ("[W]ords cannot be read in a fashion that would render other words or phrases meaningless, redundant, or superfluous."); *S. Illinoisan*, 218 Ill.2d at 415 (holding that a court must give effect to all of a statute's provisions "as a whole"); *see also Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990) ("[I]n ascertaining the meaning of a statute, the statute should be read as a whole with all relevant parts considered" and "should be construed so that no word or phrase is rendered superfluous or meaningless."); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1078 (7th Cir. 2013) (refusing to adopt the plaintiff's interpretation of a statutory term because it would render another term superfluous).

*Second*, broadly construing an undefined term ("scan of . . . face geometry") to trump an unambiguous and specific exclusion ("information derived from" photos), *see* 740 ILCS 14/10,

turns the ordinary rules of statutory construction on their head.  Specific terms carry more weight than general terms.  *In re Meier*, 532 B.R. 78, 80 (Bankr. N.D. Ill. 2015) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling.") (citation omitted); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general.") (citation omitted).  Here, there is a specific, unambiguous exception for photos and information derived from photos.  "[S]can of . . . face geometry" cannot be read so broadly that it swallows the exception.

The plain language of the statute makes clear that photos and information derived from them simply are not covered by BIPA.  A court cannot interpret BIPA in a way that would nullify this express exclusion and cannot read a general term to trump a specific one.  The Court should dismiss Plaintiffs' claims, with prejudice, on this basis alone.

### 3.     BIPA's Legislative History Confirms That It Was Not Intended to Extend to Deriving Information From Photos

By its plain language, BIPA does not apply here.  If there were any ambiguity on that point, the legislative history settles it.  Legislative history and debates are "[v]aluable construction aids in interpreting an ambiguous statute."  *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 398 (2003) (citation omitted).  The legislative history of BIPA makes clear that the statute was not intended to encompass data derived from photos.

*First*, the legislative history shows that the Illinois legislature intended to regulate *in-person* facial scans, that were related to finances and security, not data derived from the image of a face in a photo.  When BIPA was enacted, major corporations had selected cities in Illinois "as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias."  740 ILCS 14/5(b).  The legislature was mindful of the fact that "the use of biometrics . . . appears to promise streamlined financial transactions and security screenings."  740 ILCS 14/5(a).

-8-

Of particular concern to the legislature was a biometrics technology and payment processor company, Pay By Touch, that had developed technology that allowed customers to pay for goods, for example at gas stations, using just their fingerprints. This history, coupled with the statutory language, makes clear that in-person prints and scans (such as that collected by Pay By Touch), *not* photographs (and so not Google Photos), were the target of the statute.

*Second,* the legislative history of BIPA indicates that the legislature did not intend BIPA to cover the technology at issue here. As it refined the language of the bill, the legislature *rejected* the addition of the term "facial recognition" as a "biometric identifier." *See* Senate Bill 2400, § 10 (Feb. 14, 2008) (Exhibit B); Amendment to Senate Bill 2400, § 10 (Apr. 11, 2008) (Exhibit C); Amendment to Senate Bill 2400, § 10 (May 28, 2008) (Exhibit D). Plaintiffs here allege that the information at issue in this case is "facial recognition technology." Complaints, ¶ 5 ("Google creates these templates using sophisticated facial recognition technology that extracts and analyzes data from the points and contours of faces that appear in photos . . ."); ¶ 21 ("Google's proprietary facial recognition technology scans each and every photo . . ."). But the Illinois General Assembly consciously *rejected* the addition of "facial recognition" to the statute. *Compare* Amendment to Senate Bill 2400, § 10 (Apr. 11, 2008) (Exhibit C) (proposing addition of "facial recognition" to definition of "biometric identifier") and 740 ILCS 14/10 (final version omitting that change). A legislature's deletion of a specific provision "strongly militates against a judgment that [it] intended a result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200 (1974); *see also Laborer's Int'l Union of N. Am., Local 1280 v. State Labor Relations Bd.*, 154 Ill. App. 3d 1045, 1050, 507 N.E.2d 1200 (1987) ("[T]he intent of the state legislature can be derived not only from the language actually adopted, but also from the language which was changed or not adopted."). The legislature's deletion of "facial recognition" from the definition of "biometric identifier," particularly when coupled with the photos exception, indicates that the legislature it did not intend BIPA to cover the facts alleged in this case.

Finally, the legislative history of BIPA indicates that the legislature intended BIPA to be narrowly construed. As the bill worked through the legislature, the definitions of "biometric information" and "biometric identifier" were progressively narrowed. In addition to rejecting the addition of the term "facial recognition" as a "biometric identifier," the legislature also opted for the narrower term "scan" over "records." *See* Senate Bill 2400, § 10 (Feb. 14, 2008) (Exhibit B); Amendment to Senate Bill 2400, § 10 (Apr. 11, 2008) (Exhibit C); Amendment to Senate Bill 2400, § 10 (May 28, 2008) (Exhibit D). Such progressive narrowing of the statute's scope indicates that the legislature did not intend that courts take an expansive view of the statute. *See Bergin v. Bd. of Trustees of Teachers' Ret. Sys.*, 31 Ill. 2d 566 (1964) ("It is always proper to consider the course of legislation upon a particular statute in arriving at the legislative intent").

BIPA's legislative history and the circumstances surrounding BIPA's passage indicate that the Illinois legislature did not intend BIPA to cover the facts alleged in this case. Rather, the legislature intended to regulate *in person* scans and data derived from them, not photos.

### 4. The Illinois Legislature Would Not Have Intended to Enact a Statute that Effectively Prohibits Photo-Organizing Technology

The structure of the statute itself also belies any suggestion that BIPA was intended to apply to information derived from photos. BIPA requires, among other things, providing written notice and obtaining consent from individuals whose scans will be collected. This notice and consent regime makes sense in connection with physical scans of face or hand geometry: In that context, the subject of the scan will be present and available to be notified and to provide written consent (or to withhold it). But these notice and consent requirements make no sense when applied to photos and information derived from photos. Photos, by their nature, preserve images for years (potentially indefinitely). The subject of a photo seldom remains with the photo, and a photo might be taken of an unknown person, in an unknown place, then looked at years later. Under Plaintiffs' reading of BIPA, one cannot "scan" "face geometry" in a photo, or derive any information from such a "scan," without first giving written notice to the person and obtaining a written release. But the nature of photos will often make this impossible to do. As a

consequence, one could not use any technology that even arguably "scans" "face geometry" in a photo, without risking a violation of BIPA.[5]  (And as discussed in the following section, this chilling effect would not be limited to Illinois, because one cannot tell from a photo what connection it might have to the state of Illinois.)

Plaintiffs' interpretation of BIPA would extend liability far beyond what the legislature intended to regulate.  These problems are inherent to any law that attempts to broadly regulate what someone can do with their own photos, and simply reinforce what the legislature explicitly wrote: BIPA does not apply to photos or information derived from them.

### 5.    The Illinois Legislature Would Not Have Intended BIPA to Apply to Conduct Outside of Illinois, in Violation of the Dormant Commerce Clause

According to Plaintiffs, photos taken anywhere in the country (or the world) might implicate BIPA, so long as the photo includes an Illinois resident.  *See* Complaints ¶¶ 21-22 (describing how Google Photos purportedly violates statute); Rivera Complaint ¶ 35; Weiss Compl. ¶ 36 (defining classes as individuals "who, while residing in the State of Illinois, had their biometric identifiers . . . obtained by Google").  This interpretation cannot be right for the myriad reasons set forth above, and also because it would result in unconstitutionally regulating conduct that occurs wholly outside of Illinois.

Interpreting BIPA to apply to photos, as Plaintiff's propose, would effectively regulate conduct having no connection to Illinois.  It is often impossible to determine whether a photo depicts Illinois residents, was taken in Illinois, or has some other connection to Illinois, merely by looking at it.  Effectively, one would have to comply with BIPA whenever there is a mere possibility that a photo implicates Illinois.  This would result in the extension of BIPA well

---

[5] The inherent difficulty of complying with BIPA as to photos is easy to see when one imagines how compliance would work in practice.  For example, someone using an offline photo-organizing program would typically store and possess the associated data— including data about the shapes (including, at least arguably, the "geometry" of faces) in photos.  BIPA extends equally to individuals as well as other entities.  740 ICLS 14/10.  Under Plaintiffs' interpretation of the statute, BIPA would impose statutory violations of up to $5,000 whenever someone used such software to, for example, "scan" the "geometry" of a photo of the face of an Illinois resident.  That is, under Plaintiffs' overreaching interpretation of BIPA, the owner of a photo could be liable for statutory damages just because he ran photo organizing software on his computer.

beyond Illinois' borders, to conduct occurring wholly outside the state, because many such photos will in fact have no connection to Illinois at all.  As set forth in greater detail below, if the statute were interpreted this way, it would violate the dormant Commerce Clause.  *Healy v. Beer Inst.,* 491 U.S. 324, 336 (1989) ("[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature").  The Illinois Legislature cannot have intended this result.

Plaintiffs' overreaching and unworkable interpretation of BIPA as extending well beyond Illinois borders also violates Illinois' presumption against extraterritorial application of state statutes.  *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005) ("[It is] the long-standing rule of construction in Illinois" that a "'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'") (citation omitted); *Graham v. Gen. U.S. Grant Post No. 2665 V.F.W.*, 43 Ill. 2d 1, 6 (1969) ("[W]hen a statute . . . is silent as to extraterritorial effect, there is a presumption that it has none.").  BIPA itself confirms this is not what the legislature intended.  740 ILCS 14/5(b) (stating that the impetus for BIPA was that the "City of Chicago and other locations in [the] State" had been selected to pilot new biometric-facilitated financial applications).

In contrast, construing BIPA to cover *in-person scans* ensures that the statute's provisions are applied within Illinois, where the Illinois legislature likely intended to regulate. "[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice . . . [and] [i]f one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court."  *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005); *see also In re Ryan*, 725 F.3d 623, 626 (7th Cir. 2013) ("It is the province of the legislature to choose language that maximizes its own purposes, and for the courts to give that language its plain meaning or, where it is ambiguous, to interpret it . . . in a manner that will render it constitutional."); *Wilson v. Dep't of Revenue*, 169 Ill. 2d 306, 310 (1996) (Courts

"presume statutes to be constitutional and must construe enactments by the legislature so as to uphold their validity whenever it is reasonably possible to do so.") Interpreting BIPA to exclude information derived from photos would avoid an outcome where BIPA has extraterritorial reach and violates the dormant Commerce Clause. This is yet another reason the Court should reject Plaintiffs' interpretation of the statute in favor of one that excludes information derived from photos.

6. **Other Courts Have Reached the Wrong Result with Respect to BIPA**

Whether BIPA applies to extracting facial geometry data from photos remains a matter of first impression, because no Illinois state court, and no court with precedential authority, has ruled on this issue. Two other courts have considered the issue, but neither decision provides a persuasive rationale for why BIPA should apply to deriving facial geometry data from photos. *See* Order, *Norberg v. Shutterfly, Inc.*, No. 15-cv-5351, Dkt. 41 (N. D. Ill., Dec. 29, 2015) ("Shutterfly Order"); Order re Mot. to Dismiss and Summ. J., *In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-03747, 2016 WL 2593853 (N.D. Cal. May 5, 2016) ("Facebook Order"). This Court is not bound by these orders as a matter of precedent. *Klein v. Depuy, Inc.*, 476 F. Supp. 2d 1007, 1023 (N.D. Ind. 2007), *aff'd*, 506 F.3d 553 (7th Cir. 2007) ("Although federal courts are bound to state court precedents in interpreting state law, there is no authority that requires a district court that is attempting to predict how the highest state court would rule to follow the decision of federal courts sitting in that state."); *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457-58 (7th Cir. 2005) ("a district court decision does not have stare decisis effect; it is not a precedent. . . . The fact of such a decision is not a reason for following it.") (citations omitted). Further, the Court should consider these decisions unpersuasive for the reasons discussed below.

*First*, the Shutterfly Order merely denies a motion to dismiss in a cursory way, and does not discuss how to reconcile the plain language of BIPA with an interpretation that construes BIPA to apply to information derived from photos. For this reason, the Court should not give the decision any weight. *See Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 233 (2008) (declining to

follow the Court's "cursory treatment of an issue that was not the primary focus of the Court's opinion").

*Second*, the Facebook Order does not address the inconsistency between the photos exception and applying BIPA to information derived from photos, but instead relies on an interpretation of the word "photograph" that is supported neither by BIPA's plain language or it's legislative history, and which leads to absurd results. *See* Facebook Order at *11-13. The Facebook Order should not guide this Court's decision either.

In the Facebook Order, the court considered whether BIPA covered Facebook's practice of deriving information from photos uploaded to its service to offer "tag suggestions" about who the photos depict. *Id.* at *1. The court reasoned that the Illinois legislature intended BIPA to apply broadly, "to address emerging biometric technology," and on that basis, construed the term "scan of . . . face geometry" to apply to photos. To deal with the inconsistency this would create in the statute, the court interpreted the photos exception to include only "paper prints of photographs," not digital photos. *Id.* at *12.

Respectfully, there is no basis to limit the photos exception to paper, but not digital, photos. *First*, the statute itself does not distinguish between "paper prints" and "digital" photos. Illinois courts are not permitted to read words into a statute, particularly where (as here) doing so would contradict the statute's plain language. *People ex rel Stocke*, 80 Ill. App. 3d at 115 ("Since courts lack legislative powers, we are not permitted to add words to a statute to change its meaning."); *see also Hinkle by Hinkle v. Henderson*, 85 F.3d 298, 304 (7th Cir. 1996) (Under Illinois law, "courts should not insert words into legislative enactments when the statute otherwise presents a cogent and justifiable legislative scheme.") (citation omitted).

*Second*, the Facebook Order disregards the context in which BIPA was passed. When the statute was passed in 2008, the term "photographs" was commonly understood (as it is now) to mean *both* digital photos as well as paper photos—indeed, digital photography was common,

most cell phones included cameras, and film cameras were soon to be outdated.[6]  Consistent with this, there is no indication whatsoever in the legislative history that lawmakers intended to limit the word "photographs" to just paper prints.

*Third,* the Facebook court's strained interpretation of BIPA leads to absurd results. Absent an exception for digital photographs, BIPA could apply even to digitally copying photos of people since that arguably involves "scan[ning]" the "face geometry" in a photo.  Indeed, under this strained interpretation, merely taking a digital photo could trigger the statute, because the photos exception applies only to hard copy photos.  The Illinois legislature cannot have intended to enact a statute that would regulate individuals who merely wanted to copy or take digital photos.  Not only would this be overreaching and intrusive, it would be completely untethered from the stated purpose of BIPA.

 Because the Complaints rest on an erroneous construction of BIPA that is barred by the plain language of the statute and cannot be squared with either the General Assembly's express findings or the statute's legislative history, the Court should dismiss the Complaints with prejudice.  *See Guinto v. Nestorowicz*, No. 14 C 09940, 2015 WL 3421456, at *1 (N.D. Ill. May 28, 2015) (granting motion to dismiss with prejudice as to claims that were not cognizable under the circumstances pled by the plaintiff).

**B.**    **If the Court Were to Adopt Plaintiffs' Interpretation of BIPA, BIPA Would Violate the Dormant Commerce Clause and the Complaints Would Be Subject to Dismissal on That Basis**

If BIPA is interpreted to apply to photos and information derived from photos— such as the photos and alleged "face templates" at issue here—it would violate the dormant Commerce Clause.

Individuals and companies generally cannot divine, by looking at a photo, its connection to Illinois—whether it contains images of Illinois residents, whether it was taken in Illinois, or

---

[6] For example, by 2008, digital camera sales far outpaced analog camera sales.  *See* Stephen Dolezalek and Josh Freed, Third Way, *An American Kodak Moment* (Apr.17, 2014), *available at* http://www.thirdway.org/report/an-american-kodak-moment (last accessed on May 18, 2016).

whether it otherwise has a sufficient nexus to Illinois to bring it within the purview of BIPA. As a result, the only way to ensure compliance with BIPA would be to comply with BIPA as to all photos. The practical consequence of such an overreaching interpretation would be an effective ban on any photos technology that involves a "scan of . . . face geometry"— not just in Illinois, but everywhere. The dormant Commerce Clause does not permit Illinois to regulate so broadly. *See Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (plurality opinion) (invalidating Illinois law regulating interstate corporate takeovers); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665 (7th Cir. 2010) (recognizing that dormant Commerce Clause requires invalidation of state statutes that "actually attempt to regulate activities in other states"). Thus, if the Court adopts Plaintiffs' interpretation of the statute, it must find BIPA void as unconstitutional and dismiss the Complaints.

### 1.     Applicable Standard

The dormant Commerce Clause is a direct "limitation upon the power of the States," *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 370-71 (1976) (citation omitted), which "prohibits discrimination against interstate commerce and bars state regulations that unduly burden interstate commerce," *Quill Corp. v. N.D.*, 504 U.S. 298, 312 (1992). The doctrine ensures that state autonomy over "local needs" does not inhibit "the overriding requirement of freedom for the national commerce." *Great Atl. & Pac. Tea Co.*, 424 U.S. at 371 (citation omitted). The Supreme Court has held that "our cases concerning the extraterritorial effects of state economic regulation stand at a minimum for the following proposition[ ]: . . . the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy*, 491 U.S. at 336 (ellipsis and citation omitted). In analyzing the extent to which the extraterritorial application of a state law runs afoul of the Commerce Clause:

> The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State. . . . [T]he practical effect of the statute must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the

> legitimate regulatory regimes of other States. . . . Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State.

*Id.* at 336-37. Accordingly, attempts by a single state to regulate conduct occurring entirely in another state violate the Commerce Clause, even if that conduct has effects within the regulating state. *See, e.g., Edgar*, 457 U.S. at 642-43 (plurality opinion) (invalidating Illinois law regulating interstate corporate takeovers because it directly regulated transactions that take place across state lines); *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 168-69, 177 (S.D. N.Y. 1997) (finding the restriction of New York Internet legislation violated the Commerce Clause where the court deemed it impossible to limit the application of the statute solely to conduct within New York).

### 2. If BIPA Applies to Scans of Face Geometry Derived from Photos, It Violates the Dormant Commerce Clause

Here, under Plaintiff's interpretation, the "practical effect" of BIPA is to "control conduct beyond the boundaries" of Illinois. *Healy,* 491 U.S. at 336-37. This is because an entity that derives so-called "scans" of "face geometry" from photos cannot limit compliance with BIPA to Illinois. Whatever the required nexus with Illinois may be for BIPA to apply,[7] this nexus simply cannot always be ascertained by looking at a photo. As a result, since a company or individual can seldom be sure that a photo does *not* depict an Illinois resident, or was *not* taken in Illinois, or otherwise is *not* covered by BIPA, it must comply with BIPA not only as to photos taken within Illinois' borders, but also as to all of those that inevitably have no connection to Illinois whatsoever, or risk violating BIPA.[8] Applying BIPA's notice and consent requirements to photos makes compliance nearly impossible because of the difficulty of identifying and locating

---

[7] It is unclear, under Plaintiffs' interpretation, what nexus with Illinois is required for BIPA to attach. Plaintiffs took photos in Illinois and are Illinois residents themselves, but the putative classes are defined to include *any* Illinois resident whose "face templates" were obtained by Google at the time of the alleged scan, regardless of where the photo was taken, where it was uploaded to Google Photos, or whether there is any other connection to Illinois. Complaints ¶¶ 7, 27-28, 36.

[8] In contrast, a company that takes an in-person scan of a person's face in Illinois can tailor its conduct to comply with BIPA, and clearly need not comply with BIPA when operating in other jurisdictions.

subjects long after the photo was taken. As a result, applying BIPA to photos would result in an effective ban on any technology that arguably made a "scan of . . . face geometry."

BIPA operates much like other state statutes that courts have struck down as violating the Commerce Clause. For example, *Sam Francis Foundation v. Christies, Inc.* involved a portion of the California Resale Royalty Act ("CRRA"), which required the seller of fine art to pay the artist a five percent royalty if "the seller resides in California or the sale takes place in California." 784 F.3d 1320, 1323 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 795, 193 L. Ed. 2d 710 (2016). *Sam Francis* held that this portion of the CRRA was invalid and violated the dormant Commerce Clause because it applied to sales that took place outside California that had no necessary connection with California other than the residency of the seller. *Id.* (invalidating portion of CRRA that "directly control[ed] commerce occurring wholly outside the boundaries" of California).

Similarly, in *Teltech Systems, Inc. v. McCollum*, a district court invalidated Florida's Caller ID Anti-Spoofing Act because it was impossible to determine ex-ante whether a call recipient was located in Florida such that the statute applied. No. 08-61644-CIV, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009). Thus, the court determined that the practical effect of the statute was that it regulated commerce everywhere, not just in Florida, and by regulating conduct that occurred wholly outside Florida, it violated the dormant Commerce Clause. *Id.* ("[T]he Act makes it impossible for [plaintiffs] to conduct their businesses or use Caller ID spoofing services anywhere in the country without risk of liability under this Florida statute. Accordingly, it has the practical effect of regulating commerce wholly outside of Florida, by making it impossible for Plaintiffs to use or offer Caller ID spoofing services anywhere.").

Several courts have also struck down state laws seeking to regulate content on the Internet, recognizing that such laws by their nature project into other states and in so doing violate the dormant Commerce Clause. *See, e.g., Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) (holding that Vermont statute that prohibited transferring sexually explicit material harmful to minors violated the dormant Commerce Clause because "[a]lthough Vermont

aims to protect only Vermont minors, the rest of the nation is forced to comply with its regulation or risk prosecution."); *Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1161-62 (10th Cir. 1999) (reaching the same result with respect to a New Mexico statute that criminalized the dissemination by computer of material harmful to minors); *Am. Libraries Ass'n*, 969 F. Supp. at 169 (holding that similar New York statute represented "an unconstitutional projection of New York law into conduct that occurs wholly outside New York").

Here, if BIPA were interpreted to apply to photos, it would effectively require compliance everywhere, not just in Illinois. The "practical effect" of such an interpretation would be the regulation of "commerce occurring wholly outside [Illinois'] borders," which is unconstitutional under the dormant Commerce Clause. *Healy*, 491 U.S. at 332. Thus, like the CRRA, the Caller ID law, and the regulations against distributing online content to minors that came before it, BIPA is unconstitutional under the interpretation proffered by Plaintiffs.

The Illinois legislature is not permitted to decide for the rest of the world how biometric technology should be regulated. If the Court accepts Plaintiffs' overreaching interpretation of BIPA and finds that BIPA applies to photos, it must also hold that BIPA is void as unconstitutional and dismiss the Complaints. *See, e.g.*, *Sam Francis Found. v. eBay Inc.*, No. 2:11-CV-08622, 2012 WL 12294395, at *1 (C.D. Cal. May 17, 2012) (dismissing complaint with prejudice because CRRA violates the Commerce Clause); *People ex rel. Sklodowski,* 162 Ill.2d 117, 136 (1994) (Freeman, J., concurring in part and dissenting in part, joined by Harrison, J.) ("legislation unconstitutional on its face is void, not merely voidable").

## IV. CONCLUSION

BIPA does not apply to this case: the statute itself says it does not; its legislative history indicates it does not; and common sense demands it does not. To construe BIPA otherwise would render the statute unconstitutional. For these reasons and as discussed above, the Court should grant Google's motion and dismiss the Complaints with prejudice.

Dated:  May 18, 2016                    GOOGLE INC.,


                                        By:  */s/ Susan D. Fahringer*
                                             Susan D. Fahringer

                                        **PERKINS COIE LLP**
                                        Susan D. Fahringer, *admitted pro hac vice*
                                        SFahringer@perkinscoie.com
                                        Nicola C. Menaldo, *admitted pro hac vice*
                                        NMenaldo@perkinscoie.com
                                        1201 Third Avenue, Suite 4900
                                        Seattle, WA  98101-3099
                                        Telephone:  206.359.8000
                                        Facsimile:  206.359.9000

                                        Sunita Bali, *admitted pro hac vice*
                                        SBali@perkinscoie.com
                                        505 Howard Street, Suite 1000
                                        San Francisco, CA  94105-3204
                                        Telephone:  415.344.7000
                                        Facsimile:  415.344.7050

                                        Debra R. Bernard (ARDC No. 6191217)
                                        DBernard@perkinscoie.com
                                        131 South Dearborn Street, Suite 1700
                                        Chicago, Illinois 60603-5559
                                        Telephone: 312.324.8400
                                        Facsimile: 312.324.9400